DECISION
Plaintiffs appeal Defendant's Notice of Deficiency Assessment, dated October 21, 2008, denying the working family child care credit claimed for tax year 2007. A trial was held May 20, 2009, in the Oregon Tax Courtroom, Salem, Oregon. Plaintiff Patricia Hand (Plaintiff), appeared on behalf of Plaintiffs. Maribel Luna, Tax Auditor, and Shannon Ball, Senior Tax Auditor, appeared on behalf of Defendant.
Plaintiffs' exhibits 1 through 13 and Defendant's exhibits A through H were admitted without objection.
 I. STATEMENT OF FACTS
Plaintiffs claim that they are entitled to receive the working family child care credit claimed on their 2007 state income tax return because Timothy Hand (Hand) had a "disability" that prevented him from: (1) providing child care for his two and one-half year old son, Logan; (2) looking for work or being employed outside the home; and (3) attending school. (Ptfs' Compl at 2.)
The parties informed the court that they agree that (1) Plaintiffs met the working family child care credit income requirement; (2) Plaintiffs provided adequate documentation of child *Page 2 
care expenses; (3) the Oregon Department of Human Services determined that Hand met its definition of disabled; and (4) Plaintiffs qualified for the working family child care credit during the 59 days Hand was hospitalized in 2007. Plaintiff and Defendant agree that Plaintiffs testified at the 2007 legislative committee hearings in favor of House Bill 2752 (HB 2752), relating to the working family child care credit.
Plaintiff testified that Hand was diagnosed in 2007 with Crohn's disease, which she described as "an inflammation of the digestive tract." According to Plaintiff, Hand is currently treated by three physicians. Plaintiff testified that Edward Schultheiss, M.D., is Hand's gastroenterologist and has treated Hand since 2007. On January 19, 2008, Dr. Schultheiss completed Oregon Form WFC-DP, Verification of Disabled Parent or Guardian for Oregon Working Family Child Care Credit. (Def's Ex H at 3.)[1] Dr. Schultheiss concluded that other activities of daily living, specifically: (1) "Medication Management;" (2) "Preparing Medi/Cooking;" (3) "Managing Finance;" and (4) "Driving," "kept [Hand] from doing all of the following: Providing child care; Being gainfully employed; and Attending school." (Id.) (Emphasis in original.)[2] On the Form WFC-DP, Dr. Schultheiss noted those activities of daily living explained why Plaintiffs have a "need for child care." (Id.) Plaintiff testified that Hand has been unemployed since 1997. *Page 3 
Plaintiff testified that Robert R. Davies, D.O., is Hand's primary care physician and has treated Hand since 2006. Dr. Davies stated, in a letter dated December 26, 2008, that Hand "is able to care for his own [activities of daily living] but I would not feel comfortable having him care for a child." (Ptfs' Ex 7 at 1.) Plaintiff testified that Satyanarayana Chandragiri, M.D., is Hand's mental health provider and has been treating Hand since 2007. Dr. Chandragiri stated in a letter dated May 4, 2009, that "[a]s part of [Hand's] treatment he has to take many medications that makes it hard for him to supervise his child and hence he and his wife have to make arrangement [sic] for child care when his wife works." (Ptfs' Ex 7 at 2.)
Plaintiff testified that Hand's first surgery was in 2001, which resulted in a portion of his intestine being removed. Plaintiff testified that Hand has had three operations to remove inflamed portions of his digestive tract due to the disease. She testified that, after Hand is hospitalized for a "number of days," as he was five separate times in 2007, he "requires three to four weeks of physical therapy" to regain the range of use of his arms, allowing him to dress, and comb his hair. Plaintiff testified that Hand sometimes uses a cane to stabilize himself after his hospitalizations. During 2007, Hand was hospitalized a total of 59 days, including being treated at the "ER" on 18 different dates. (Ptfs' Ex 1 Summary.) Plaintiff testified that Hand's trips to the hospital and his hospital stays require them to keep Logan in a child care program that "has a spot reserved for him." Plaintiff testified that she or her mother usually takes Hand to his doctor's appointments, and, "on good days," Hand is able to take public transportation.
Plaintiff testified that Hand is cognitively unaware at times. Plaintiff testified that Hand has left the stove on for hours, and he can be disoriented as to place and time. Plaintiff testified that Hand called friends "in the middle of the night," thinking it was the middle of the day; he *Page 4 
called his wife "at work on Sunday," when she "was at church." Plaintiff testified that in 2007, Hand took apart the components of a television and "spread them around the house" and had no recollection of doing so the next morning. Plaintiff testified that she prepares Hand's medication and reminds him to take them due to his disorientation. Plaintiff testified that she rarely leaves Logan in the care of Hand, stating she only does so for short periods of time while both Hand and Logan are sleeping. Plaintiff testified that Hand sleeps up to 20 hours a day after a hospitalization and that Logan must stay quiet while in the house in order to not disturb Hand. Plaintiff testified that "no two days are exactly alike" for Hand.
Plaintiff testified that she and Hand offered testimony in favor of the legislation, HB 2752, that resulted in enactment of statutory provisions allowing the working family child care credit to be claimed when a taxpayer's spouse has a disability. She concluded that it would be "an injustice" for Plaintiffs "to be excluded."
Defendant concluded that Plaintiffs did not qualify for the working family child care credit in 2007, except for the "periods of time" when Hand was hospitalized. Defendant concluded that Hand's "physical or cognitive condition" did not meet the statutory definition of "disability" in 2007, because Hand did not require assistance with "activities of daily living" like dressing, feeding and toileting. However, Defendant concluded that "Plaintiffs qualified for the working family child care credit" for the "periods of time" Hand was hospitalized in 2007, because Hand was "disabled" during the hospitalizations and his "physical * * * condition" resulted in him "requiring assistance with activities of daily living." *Page 5 
 II. ANALYSIS
Oregon allows a qualified taxpayer to claim a working family child care credit for "child care" provided "for the purpose of allowing the taxpayer to be gainfully employed * * *." ORS 315.262(1).[3] A taxpayer may qualify for the working family child care credit if the taxpayer's spouse has a "disability[.]" ORS 315.262(2). The statute provides in relevant part:
 "A taxpayer is not disqualified from claiming the credit under this section solely because the taxpayer's spouse has a disability, if the disability is such that it prevents the taxpayer's spouse from providing child care, being gainfully employed, seeking employment and attending school. The Department of Revenue may require that a physician verify the existence of the disability and its severity." ORS 315.262(2)."
Disability" is defined as a "physical or cognitive condition that results in a person requiring assistance with the activities of daily living." ORS 315.262(1)(c).
The issues before the court are whether Hand had a "disability" that (1) resulted in Hand "requiring assistance with activities of daily living" and (2) that his "disability" prevented him from "providing child care, being gainfully employed, seeking employment and attending school." ORS 315.262(1)(c); ORS 315.262(2). Defendant agreed that Plaintiffs qualified for the working family child care credit for the 59 days in 2007 that Hand was hospitalized because Hand had a "disability," a physical condition, that Defendant concluded met the requirements of ORS 315.262(1)(c) and ORS 315.262(2). *Page 6 
A. "[R]equiring assistance with activities of daily living" ORS315.262(1)(c).
ORS 315.262(5) grants the Department of Revenue the authority to:
 "(a) Adopt rules for carrying out the provisions of this section; and
 "(b) Prescribe the form used to claim a credit and the information required on the form. The form may provide for verification of an individual's disability by a physician, if applicable, as described in subsection (2) of this section."
The Department of Revenue's prescribed form is titled "Verification of Disabled Parent or Guardian for Oregon Working Family Child Care Credit (WFC-DP).[4] (Def's Ex H at 3.)
The Department of Revenue adopted OAR 150.315.262(2)(c)(A), [5]
defining a "physical or cognitive condition" as used in ORS 315.262(1)(c). The rule states in relevant part:
 "(A) A `physical or cognitive condition' is a state where an individual's ability to perform a basic activity of daily living is markedly restricted where all or substantially all of the time, even with therapy and the use of appropriate devices and medication, the individual is unable (or requires an inordinate amount of time) to perform an activity of daily living."
OAR 150.315.262(2)(c)(A). For an individual to have a "physical or cognitive condition[,]" that individual must be restricted in their "ability to perform a basic activity of daily living." Id. For an individual's "physical or cognitive condition" to be a "disability[,]" it must result in that individual "requiring assistance with activities of daily living." ORS 315.262(1)(c). "`Activities of daily living' include (i) Bathing; (ii) Dressing oneself * * *; (iii) Feeding oneself * * *; (iv) medicating oneself; *Page 7 
(v) Toileting; or (vi) Transferring, ambulating, and being mobile." OAR 150-315-262(2)(c)(B).
"Cognitive" is not defined in ORS 315.262 nor OAR 150-315.262(2)(c). In construing statutes, the court follows the leading case on statutory interpretation, Portland General Electric Company v. Bureau of Labor andIndustries, 317 Or 606, 859 P2d 1143 (1993) (PGE). PGE directs the court to accept the plain meaning of a statute and "that words of common usage typically should be given their plain, natural, and ordinary meaning."Id. at 611. The legislative intent is to be determined first from the text and context of the statute. Id. The "plain, natural, ordinary meaning" of "cognitive" is "of, relating to, or being conscious intellectual activity (as thinking, reasoning, remembering, imagining, or learning words) * * *." Webster's Third Int'l Dictionary 440 (unabridged ed 2002). "Cognitive" includes the intellectual activity of "remembering." Id.
The first issue is whether Hand, in addition to the time he was hospitalized, had a "physical or cognitive condition" such that he required "assistance with the activities of daily living." OAR 150.315.262(2)(c)(A); ORS 315.262(1)(c). On January 19, 2008, Dr. Schultheiss verified the "existence" and "severity" of Hand's 2007 "disability" by completing form WFC-DP provided by Defendant. ORS315.262(2); (Def's Ex H at 3). Dr. Schultheiss stated on form WFC-DP that Hand "required assistance" with "[o]ther activit[ies] of daily living, [including] medication management." (Def's Ex H at 3.) On Form WFC-DP, Dr. Schultheiss noted that the tax year was "permanent." (Id.) Form WFC-DP states: "Instructions: * * * If the disability is permanent and the physician *Page 8 
identifies that the taxpayer will permanently meet the criteria listed below, enter `Permanent' instead of the tax year." (Def's Ex H at 3) (emphasis in original).)
Plaintiff testified that Hand can be cognitively unaware and disoriented as to time and place. Plaintiff testified that Hand required assistance with his medication because he does not remember when he has taken them. Plaintiff testified that she prepares Hand's medications and reminds him to take them, stating that she must do this "so [Hand] doesn't overdose."
The court concludes that Hand had a "cognitive condition" as defined in OAR 315.262(2)(c)(A) because Hand was "restricted" in his "cognitive" ability to "medicat[e]" himself, an "activit[y] of daily living" identified by the Department of Revenue. OAR 150.315.262(2)(c)(B)(iv). The court concludes that Hand's "cognitive condition" met the statutory definition of "disability" because it resulted in him "requiring assistance with activities of daily living[.]" ORS 315.262(1)(c).
B. "Providing child care, being gainfully employed, seeking employmentand attending school" ORS 315.262(2).
The second issue is whether Hand's "disability" prevented him from "providing child care, being gainfully employed, seeking employment and attending school" in 2007, as required in ORS 315.262(2).
As previously stated, Hand's "disability" was verified by Dr. Schultheiss who completed form WFC-DP. (Def's Ex H at 3.) Dr. Schultheiss verified that Hand had a "disability [which] means a physical or cognitive condition" such that (1) he required assistance with "activities of daily living"; and (2) prevented him from "providing child care, being gainfully employed, seeking employment and attending school." *Page 9 
ORS 315.262(1)(c); ORS 315.262(2). Dr. Schultheiss also stated on form WFC-DP, there was a "need for child care." (Def's Ex H at 3.)
Plaintiff testified that Hand can be cognitively unaware and disoriented as to time and place. Plaintiff testified that, due to Hand's cognitive state, he was unable to care for Logan who was two and one-half years of age in 2007.
In a letter dated December 26, 2008, Dr. Davies stated, "[b]ecause of the constellation of the disease and [Hand's] medication, he is unable to work and he is unable to care for his child." (Ptfs' Ex 7 at 1.) Dr. Chandragiri, Hand's mental health provider, wrote in a letter dated May 4, 2009, that due to "many medications [it is] hard for [Hand] to supervise his child * * *." (Ptfs' Ex 7 at 2).
The court concludes that in 2007, Hand had a "disability" that prevented him from "providing child care" for his two and one-half year old son, Logan. Hand's 18 trips to "ER" and 59 days in the hospital, in addition to the verified need for assistance arising from his cognitive condition, convince the court that Hand is prevented from being a reliable child care provider.
In addition, the court concludes Hand had a "disability" that prevented him from "being gainfully employed, seeking employment and attending school." ORS 315.262(2). Plaintiff testimony that Hand has not been employed since 1997, is unable to drive, and his cognitive condition limits his ability to perform those activities was supported by one of Hand's treating physicians, Dr. Davies.
C. Burden of proof
In proceedings before the magistrate of the Tax Court, "a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon *Page 10 
the party seeking affirmative relief." ORS 305.427. Plaintiff carried the burden of proof. Hand's "disability," arising from his cognitive condition, was verified by Hand's physician, Dr. Schultheiss, using Defendant's prescribed form WFC-DP that he dated January 19, 2008, and supported by Plaintiffs testimony and Hand's physicians, Dr. Davies and Dr. Chandragiri. (Def s Ex H at 3); (Ptfs' Ex 7 at 1-2.) Defendant's evidence focused on Hand's "physical condition" but Defendant offered no evidence contrary to the evidence offered by Plaintiffs' related to Hand's "cognitive condition." ORS 315.262(1)(c).
 III. CONCLUSION
After careful consideration of the sworn testimony and evidence, the court concludes that in 2007, Hand had a "physical or cognitive condition" that was a "disability" which prevented him from "providing child care, being gainfully employed, seeking employment and attending school." ORS 315.262(1)(c); ORS 315.262(2). Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs are entitled to claim the working family child care credit on their 2007 Oregon state income tax return.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed. Thisdocument was signed by Presiding Magistrate Jill A. Tanner on July 23,2009. The Court filed and entered this document on July 23, 2009.
[1] Five form WFC-DPs were submitted as evidence: Defendant's Exhibit G at 2, dated February 20, 2009; WFC-DP are to Defendant's Exhibit H at 3 because it is signed by a physician, lists activities of daily living, and is closest in time to the 2007 tax year at issue.
[2] During a telephone conversation on March 6, 2009, to discuss the form Dr. Schultheiss signed on January 19, 2008, Defendant asked Dr. Schultheiss what he meant by "Medication Management[,]" Dr. Schultheiss stated that Hand "needs to be reminded to take [his medications] and take them at the right times." (Def's Ex H at 4.)
[3] All references to Oregon Revised Statutes (ORS) are to 2007. ORS315.262(2) was effective for tax years beginning on or after January 1, 2007.
[4] Form WFC-DP includes the following "activities of daily living:" "Dressing, Feeding, Toileting, [and] Other activity of daily living[.]" (Def's Ex H at 3.)
[5] All references to Oregon Administrative Rules (OAR) are to 2007.